IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
BIG STONE GAP DIVISION

CLERK'S OFFICE U.S. DIST. COURT
AT ABINGDON, VA
FILED
OCT 07 2005
JOHN F. CORCORAN, CLERK
BY: DEPUTY CLERK

| | |
|---|---|
| LESLIE O. YATES, <br>     Plaintiff/Beneficiary, <br><br> v. <br><br><br> UMWA 1974 PENSION PLAN, <br>     Defendant. | <br><br><br><br> Civil Action No. 2:03cv00080 <br> **MEMORANDUM OPINION** <br><br><br><br> By: GLEN M. WILLIAMS <br> Senior United States District Judge |

The plaintiff, Leslie O. Yates, filed a complaint to recover benefits that he alleges are owed to him under the terms of the United Mine Workers of America, ("UMWA"), 1974 Pension Plan, the successor to the UMWA 1950 Welfare Fund. This matter is before the court on plaintiff's motion for summary judgment, (Docket Item No. 20), and defendant's motion for summary judgment, (Docket Item No's. 22-23). The administrative record has been filed and the court has heard argument by the respective parties. This court has jurisdiction to decide this matter under § 301(a) of the Labor Management Relations Act, 29 U.S.C.A. § 185(a) (West 1998).[1]

---

[1]Title 29 U.S.C.A. § 185(a) provides: "Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties."

-1-

## I. Facts

Yates, worked for Erwin Supply and Hardware Co. Inc., ("Erwin Supply"), and Clinchfield Coal Company, ("Clinchfield"), for over 30 years. Yates was a truck driver throughout his employment with Erwin Supply and Clinchfield. He delivered parts and supplies that were essential to the production of coal close to and around the mine openings.

Erwin Supply was owned by the Erwin family and Clinchfield until 1958 when the Erwin family sold its majority interest to Pittston Coal Co., ("Pittston"). Pittston, in turn, was the sole owner of Clinchfield. Thus, after 1958, Erwin was owned by Pittston and Clinchfield, both of whom were signatories to numerous National Bituminous Coal Wage Agreement[s], ("NBCWA"). Erwin Supply was eventually shut down by Clinchfield and Pittston on December 31, 1969. Prior to this, Erwin Supply employees were members of UMWA District 50, which was established by the UMWA in 1936. On April 1, 1968, however the employees at Erwin Supply became members of Local 7950 of District 28 and remained members of Local 7950 until Erwin Supply was closed down. After the closure of Erwin Supply, Yates, along with other Erwin Supply employees, began working for Clinchfield. Yates performed exactly the same job for Clinchfield that he had previously performed for Erwin Supply, which was delivering parts and supplies to the mines. Clinchfield continued to use Yates's original employment date with Erwin Supply for seniority purposes and to determine vacation leave time and for other administrative functions.

On May 1, 2001, Yates applied for a service pension from the NBCWA 1974 Pension Trust, ("the 1974 Plan"), which is the successor to the UMWA Welfare Retirement Fund of 1950, ("the 1950 Fund"). Yates received a letter dated June 18, 2001, which informed him that he was credited with 32.75 years of pension credit, and he was to receive benefits effective on May 1, 2001, in the amount of $1,298.25 per month. However, Yates was not awarded any pension credit for his employment as a truck driver for Erwin Supply from September 9, 1957, through March 31, 1968.

Yates appealed the Board of Trustees decision awarding him only 32.75 years of pension credit. He submitted a Request for Hearing dated May 1, 2001, and he requested that he be awarded signatory service credit for January 1, 1957, through December 31, 1957, January 1, 1958, through March 31, 1968, and January 1, 1989, through December 31, 1989. Yates also asked that he be awarded interest on said sums due and owed to him accruing from May 1, 2001, the day his pension was approved. He also requested that he be awarded attorney's fees for this matter.

On November 24, 2003, a hearing was held by the defendant regarding Yates's appeal. Yates and three former co-workers testified at the hearing. A continuation hearing was held on January 13, 2004. The defendant submitted a letter dated March 8, 2004, which stated that it could not reach a decision and requested that Yates and the Board of Trustees submit to an arbitration proceeding in order to reach a final decision. The Board of Trustees then met on or about March 29, 2005, and decided in lieu of arbitration to deny benefits to Yates, and then they requested that this court resolve the matter.

-3-

Case 2:03-cv-00080-GMW   Document 28   Filed 10/07/05   Page 3 of 10   Pageid#: 76

## II. Analysis

The 1974 Plan is administered by a Board of Trustees. *See* 26 U.S.C.A. § 9702(b) (West 2002). The Board of Trustees was established under Article XX of the NBCWA of 1974. Under the Employee Retirement Income Security Act of 1974, ("ERISA"), 29 U.S.C.A. § 1104(a)(1)(d) (West 1999), the Board of Trustees is bound to administer the 1974 Plan according to its governing documents. The standard of review for decisions made by the trustees of the UMWA pension plan is limited to an abuse of discretion. *See Hale v. Trustees of UMWA Health and Ret. Funds,* 23 F.3d 899, 901 (4th Cir. 1994); *Boyd v. Trustees of UMWA Health & Ret. Funds,* 873 F.2d 57, 59 (4th Cir. 1989). Therefore, the trustees' decisions are reviewable only for a finding of an abuse of discretion and will not be disturbed if they are reasonable and not arbitrary and capricious. *Brogan v. Holland,* 105 F.3d 158, 161 (4th Cir. 1997) (quoting *Berstein v. Capital Care, Inc.,* 70 F.3d 783, 787 (4th Cir. 1995)). The question before this court is whether or not the 1974 Plan has correctly interpreted the regulations and whether its opinion is consistent with law, or alternatively, whether the decision is not supported by substantial evidence, is an abuse of discretion or is arbitrary and capricious. *See Boyd v. Trustees of the UMWA Health and Ret. Funds,* 873 F.2d 57, 59 (4th Cir. 1989).

The defendant makes several arguments in support of its Memorandum In Support Of Defendant's Motion For Summary Judgment And In Opposition To Plaintiff's Motion For Summary Judgment, ("Defendant's Brief"), (Docket Item No's. 22, 23). The defendant first argues that Erwin Supply was not a participating employer in the 1974 Plan. Next, the defendant argues that Yates cannot secure

pension credit because a company related to his employer was [s]ignatory to the NBCWA. Finally, the defendant argues that District 50 was the exclusive bargaining representative for Erwin's employees prior to April 1968 and the employees were not covered by the NBCWA.

The defendant first argues that Erwin Supply was not a participating employer in the 1974 Plan. (Defendant's Brief at 7.) Article II section G, of the 1974 Plan sets forth the requirement of employment for vesting purposes and states, "For purposes of this Article II, all years of classified service by a Participant with Employers signatory to the bituminous coal wage agreement then in effect shall be used for purposes of any eligibility requirement . . . ." Also, Article IV, section B, sets forth the requirements of credited signatory service under the 1974 Plan and provides, "For any year prior to January 1, 1978, service as defined in paragraph A(1) hereof during which a Participant worked as an employee in a classified job for an Employer signatory to the bituminous coal wage agreement then in effect." The "wage agreement then in effect" for purposes of vesting and determining credited signatory service was the 1950 NBCWA. The 1950 NBCWA created the 1950 Fund, and the 1950 Fund was in effect during Yates's employment at Erwin Supply from September 9, 1957, to March 31, 1968. Therefore, the 1950 Fund, being the fund "then in effect," and its requirements are binding for the determination of whether Yates shall to be credited with credited service employment while working for Erwin Supply.

Under the 1950 Fund, Yates would be eligible for a service pension if he had attained the age of 55 and established 20 years of classified work in the bituminous coal industry, including at least five years of classified work with a signatory

-5-

employer pursuant to the Bituminous Coal Wage Agreement. The definition of "classified work," which is the basis for awarding benefits under the 1950 Fund is defined as:

> Coal inspectors and weigh bosses at mines where men are paid by the ton, watchmen, clerks, engineering and technical forces of the operator, working at or from a district or local main office are exempt from this agreement.
>
> All other employees working *in or about the mines* shall be included in this agreement except essential supervisors in fact, such as mine foremen, assistant mine foremen, who, in the usual performance of their duties, make examinations for gas, as prescribed by law, and such other supervisors as are in charge of any class or labor inside or outside of the mines and who performed no production work.

NBCWA of 1950, Exemptions Under This Agreement, p. 1 (emphasis added). Therefore, in order to be covered by the 1950 Fund, an individual must be working "in and or about the mines." *Mullins v. Mullins*, 537 F.Supp. 840, 844 (W.D. Va. 1982).[2] In addition, said individual also must be a member of the collective bargaining unit, which means that the individual must have worked for an employer who signed a NBCWA. *Burden v. Trustees Of the Health and Ret. Funds of UMWA*, 816 F.2d 671, 1987 WL 35958 (4th Cir. 1987).

---

[2]*Mullins* is distinguished in the unpublished 4th Circuit opinion, *Burden v. Trustees of the Health & Retirement Funds of UMWA*, 816 F.2d 671, 1987 WL 35958 **5 (4th Cir. 1987). *Burden* discusses the meaning of "classified" jobs and employment under UMWA pension plans and reverses the district court's decision granting benefits to employees who were not members of a UMWA bargaining unit, and who were not covered by the existing UMWA wage agreement. *Burden* is distinguishable from *Mullins* because Mullins was a union member, who was covered by the wage agreement as long as he worked in or about the mines, just like Yates. The *Burden* court stated that its decision should be read in harmony with *Mullins* and not negatively against it on this issue.

The defendant cites this court's opinions in *Crabtree v. Trusteees, UMWA Health and Retirement Funds,* No. 85-0087-A slip. op. (W.D. Va. Oct. 20, 1986), and *Puckett v. Connors,* No. 88-011B, slip op. (W.D. Va. Aug. 18, 1989), and argues that this court has recognized that employees who worked under UMWA agreements that did not provide for contributions to, or benefits from, the 1974 Pension Trust are not entitled to credited service. However, the circumstances and facts of the two previously cited opinions are easily distinguishable from the circumstances and facts present in the case at hand. In both *Crabtree,* No. 85-0087-A, and *Puckett,* No. 88011-B, the plaintiffs were not working "in and around the mines." Crabtree worked for S & S Corporation, which was a corporation that manufactured mining equipment and, Puckett worked for Birchleaf Saw Mill, which sold lumber to mining operations. Neither Crabtree's nor Puckett's work qualified as "classified work" because their work was not "in and around the mines."

Yates worked for Erwin Supply from September 9, 1957, to March 31, 1968. Erwin was owned by Clinchfield and Pittston. During his employment, Yates's job required him to deliver mining supplies and mining equipment and to unload mining supplies and equipment in and around the mines. The equipment he delivered was essential to the production and mining of coal by Clinchfield and Pittston. Working in and around the mines is a necessary component of "classified work," as defined in the 1950 Plan. Therefore, Yates, as one who engaged in "classified work," by working "in or about the mines," and not otherwise specifically excluded from the definition of classified work, meets the first requirement for pension credit under the 1950 Fund.

-7-

The defendant argues that Yates cannot secure pension credit because a company related to his employer was a signatory to the NBCWA. (Defendant's Brief at 10.) Specifically, the defendant alleges that Yates's employment with Erwin Supply does not meet the second requirement for benefits under the 1950 Fund, which requires that an individual work for a signatory employer. The defendant argues that since Erwin Supply was not a signatory employer to a NBCWA, Yates employment at Erwin Supply does not qualify under the 1950 Fund.

When determining signatory operator liability under the Coal Industry Retiree Health Benefit Act of 1992, 26 U.S.C.A. §§ 9701-9722 (West 2002), (the "Coal Act"), courts look for a "parent subsidiary controlled group," under 26 U.S.C.A. §1563(a)(1) (West 2002). *See A.T. Massey Coal Co., Inc. v. Massanari,* 305 F.3d 226, 232 (4th Cir. 2002). Clinchfield and its parent company Pittston were the sole owners of Erwin Supply. Thus, Clinchfield, Pittston and Erwin Supply were a parent-subsidiary controlled group. Clinchfield and Pittston were signatories to numerous NBCWA's including the 1974 NBCWA, which established the 1974 Plan and Clinchfield was also a signatory to the 1950 NBCWA. In *Massey Coal,* the Fourth Circuit Court of Appeals said "[U]nder the 'related person' provision of the Coal Act, corporations that have never signed an NBCWA, as well as those that have never taken part in the mining industry, may be liable for Benefits . . . . the Coal Act treats the corporate family as a single employer for the purpose of assigning liability for Benefits." *Massey Coal,* 305 F.3d at 233. Furthermore, in *Jewell Ridge Coal Corp. v. Holland,* 368 F.3d 385 (4th Cir. 2004), the Fourth Circuit stated, "[A]ccording to our precedent, the signatory status of one related party may be imputed to other related parties." *Jewell Ridge,* 368 F.3d at 405, (*citing Massey Coal,* 305 F.3d 226).

If signatory status can be imputed for liability under the Coal Act, then signatory status can be imputed for benefits under the Coal Act. Therefore, the signatory status of Clinchfield and Pittston is imputed to Erwin Supply, a subsidiary of both Pittston and Clinchfield. The UMWA cannot claim a broad interpretation for itself and a narrow construction for its members. It cannot be construed one way to force collections of funds for the trusts and another way when it comes time to pay benefits to those covered members.

Defendant's final argument is that District 50 was the exclusive bargaining representative for Erwin Supply's employees prior to April 1968 and that these employees were not covered by the NBCWA. (Defendant's Brief at 12.) This assertion by the defendant is correct. However, in this instance it is of little importance. *See Mullins,* 537 F. Supp. 840 at 844. Yates paid UMWA dues, and he performed classified work in and around the mines for an signatory employer and he met the requirements set forth under the 1950 Fund. The 1950 Fund did not require that a UMWA member be specifically covered by the NBCWA to be eligible to receive signatory service credit. *See Mullins,* 537 F. Supp. at 846 (each UMWA member employed by a signatory employer is a third-party beneficiary of NBCWA). Accordingly, the court finds that Yates did classified work in or about the mines for an employer in the coal industry from September 9, 1957, to March 31, 1968. Based on this finding, the court finds that the Trustees' decision denying Yates signatory service credit from January 1, 1957, to March 31, 1968, is arbitrary and capricious and must be reversed.

In his complaint Yates also alleges that he should be awarded signatory service credit from January 1, 1989, through December 31, 1989. However, Yates submitted

no argument as to why the Trustees decision to deny credit for these years was arbitrary and capricious. Accordingly, the court can make no ruling as to the Trustees decision regarding the time period from January 1, 1989 through December 31, 1989. Therefore, the plaintiff's motion for summary judgment will be sustained in part and overruled in part and the defendants' motion for summary judgment will be overruled in part and sustained in part. An appropriate order will be so entered.

DATED: This 6th day of October, 2005.

*[signature]*

SENIOR UNITED STATES DISTRICT JUDGE